**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GUIDEHOUSE LLP,                                     :
                                                    :
                                                    :
                             Plaintiff,             :     Case No.: 1:19-cv-9470
                                                    :
              - against -                           :
                                                    :
RIZWAN SHAH,                                        :
                                                    :
                             Defendant.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## COMPLAINT

Plaintiff Guidehouse LLP ("Plaintiff" or "Guidehouse"), by and through its undersigned attorneys, brings this complaint for declaratory judgment against Defendant Rizwan Shah ("Defendant") and alleges as follows:

1.      This declaratory judgment action is the product of a months-long dispute between the parties which revolves around Defendant's fundamental misunderstanding of both his employment agreement and relevant law.  For several months, Defendant, who was an executive of Guidehouse until his voluntary resignation from the firm effective August 16, 2019, has sought a separation payment to which he is not entitled.  Now, Defendant threatens to bring a discrimination and retaliation action in the Superior Court for the District of Columbia, even though Defendant's employment agreement is explicit that forum lies exclusively in the United States District Court for the Southern District of New York (and that the governing law is the law of the State of New York).

2.      This declaratory judgment action seeks to enforce the plain text of Defendant's employment agreement with Guidehouse (the "Employment Agreement").  The gravamen of Defendant's position is that he is owed a buyout from Guidehouse because of the firm's announced

1

move to a partially variable compensation model.  Defendant claims that the change would amount to a "material reduction of his total cash compensation opportunity" and trigger the termination for "Good Reason" provision in the Employment Agreement.  What Defendant refuses to appreciate is that the change to the partially variable compensation model could have *increased* Defendant's overall compensation, and regardless, Defendant failed to satisfy the notice requirements for receiving any payout under the Employment Agreement.

3.     Tacitly conceding that he is not entitled to separation monies under the Employment Agreement, Defendant asserts baseless and unsupportable discrimination and retaliation claims in an alternative attempt to extort a payment from Guidehouse.

**Parties**

4.     Plaintiff is a company organized and existing under the laws of Delaware, with its principal place of business located at 1800 Tysons Blvd., Floor 7, McLean, VA 22102. Guidehouse is a consulting firm serving both the public and commercial sectors, with a focus on supporting client needs in healthcare, financial services, energy, environment, national security, and aerospace and defense.  The business that later became Guidehouse was formed on August 28, 2014 as a subsidiary of PricewaterhouseCoopers LLP ("PwC").  After an initial name change, the company operated as PwC's US public sector business from January 1, 2015 to May 1, 2018 under the PricewaterhouseCoopers Public Sector LLP ("PwC Public Sector") name.  On May 1, 2018, the company was acquired by Veritas Capital, transacting as Eton Holding Company.  The company's name was changed from PwC Public Sector to Guidehouse on June 13, 2018.

5.     Defendant is an individual who, on information and belief, resides at 14403 Saint Gregory Way, Accokeek, MD 20607.  Defendant was employed by Guidehouse from the time of the company's sale to Veritas Capital on May 1, 2018 until his voluntary resignation from the firm

2

effective August 16, 2019.  Defendant was previously a principal of PwC supporting the US public

sector business.  At all times during his employment with Guidehouse, Defendant was a consultant

in Guidehouse's infrastructure and disaster recovery practice.

### Jurisdiction and Venue

6.      This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332,

because there is complete diversity of citizenship between the parties and the amount in

controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendant pursuant to his Employment

Agreement, dated February 13, 2018.

8.      Specifically, the Employment Agreement states:

EXCEPT WHERE PREEMPTED BY FEDERAL LAW, THE VALIDITY,
INTERPRETATION, CONSTRUCTION, AND PERFORMANCE OF THIS
AGREEMENT IS GOVERNED BY AND IS TO BE CONSTRUED UNDER THE
LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS
MADE AND TO BE PERFORMED IN THAT STATE, WITHOUT REGARD TO
CONFLICT OF LAWS RULES. ANY DISPUTE OR CLAIM ARISING OUT OF
OR RELATING TO THIS AGREEMENT OR CLAIM OF BREACH HEREOF
SHALL BE BROUGHT EXCLUSIVELY IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, TO THE EXTENT
FEDERAL JURISDICTION EXISTS, AND IN THE COURTS OF THE STATE
OF NEW YORK LOCATED IN NEW YORK, BOROUGH OF MANHATTAN,
BUT ONLY IN THE EVENT FEDERAL JURISDICTION DOES NOT EXIST,
AND ANY APPLICABLE APPELLATE COURTS. BY EXECUTION OF THIS
AGREEMENT, THE PARTIES HERETO, AND THEIR RESPECTIVE
AFFILIATES, CONSENT TO THE EXCLUSIVE JURISDICTION OF SUCH
COURTS, AND WAIVE ANY RIGHT TO CHALLENGE JURISDICTION OR
VENUE IN SUCH COURT WITH REGARD TO ANY SUIT, ACTION, OR
PROCEEDING UNDER OR IN CONNECTION WITH THIS AGREEMENT.
EACH PARTY TO THIS AGREEMENT ALSO HEREBY WAIVES ANY
RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY SUIT, ACTION,
OR PROCEEDING UNDER OR IN CONNECTION WITH THIS AGREEMENT.

9.      Venue is properly placed in the Southern District of New York because the acts constituting the basis of Plaintiff's claims are subject to the valid forum selection provision in the Employment Agreement executed by Defendant.

10.     Guidehouse's claims are governed by the substantive law of the State of New York pursuant to the valid choice of law and forum selection clause in the Employment Agreement executed by Defendant.

11.     Guidehouse's declaratory judgment is governed by 28 U.S.C. § 2201, the Declaratory Judgment Act, and Rule 57 of the Federal Rules of Civil Procedure.

## Introduction

12.     Defendant was a well-regarded, high-performing and highly compensated executive employee (titled "partner") of Guidehouse from the time he joined the firm in 2018.  It thus came as a surprise to Guidehouse when Defendant sought to get paid to depart the firm.

13.     Specifically, on the evening of Friday, June 21, 2019, Defendant revealed his desire through an impromptu telephone call to Guidehouse's Chief Executive Officer, Scott McIntyre. In telephone conversations with McIntyre that night, Defendant expressed his interest in resigning from the firm in return for a severance package in line with those received by a handful of other partners whose employment was being terminated involuntarily.  As the purported basis for his request, Defendant, among other things, complained about his effective tax rate, and expressed concerns as to a new compensation structure.  McIntyre reaffirmed to Defendant that he was a valued member of Guidehouse, and that the firm was not interested in seeing Defendant leave (much less paying him to do so).

14.     McIntyre also explained that Defendant was not on the same footing as the departing partners to whom he compared himself – the handful of partners who were exiting, as

4

they were terminated involuntarily (for either underperformance or due to elimination or restructuring of their work units).   And, while Defendant attempted to claim that the firm's eventual change to a partially variable compensation model could amount to a material reduction in his compensation, McIntyre allayed Defendant's reservations by assuring him that he could actually earn *more* under the new compensation model.

15.     Defendant's next tack was to question whether he would fit in at Guidehouse in view of the then pending (now completed) acquisition of Navigant Consulting, Inc. ("Navigant"). McIntyre reiterated to Defendant not only that he was well-regarded in Guidehouse, but that Defendant's practice area was complementary to the consulting work of Navigant.   Defendant thanked McIntyre for speaking with him.

16.     On Monday, June 24, 2019, after having been unable to secure a buyout package, Defendant changed his tactics.   For the first time in his tenure with Guidehouse, and despite his conversations with McIntyre just three days before, Defendant complained of discrimination at the company.   For the first time, Defendant alleged discrimination on the basis of his race, color, national origin (Indian), religion (Muslim) and family responsibilities.   The rationale alleged by Defendant was that because certain others were being provided with separation packages, Guidehouse's refusal to do the same for him was discriminatory on one or more of the "check the box" categories Defendant was relying upon.   However, in contrast to Defendant—whom Guidehouse wanted to retain and who had received a compensation increase as part of the move to Guidehouse—the handful of other executives were departing involuntarily.   And, those partners were receiving separation payments pursuant to their employment agreements for involuntary terminations.

17.     In contrast, Defendant was not entitled to any separation payment under the Employment Agreement because the firm was not seeking his departure and had done nothing to trigger any such entitlement to separation payments.

18.     In the months that followed, Defendant filed a charge with the Equal Employment Opportunity Commission (the "EEOC") (July 8); resigned from his employment with Guidehouse (effective August 16), purportedly on the basis of Good Reason, as defined in the Employment Agreement; and threatened (on September 27) to file a discrimination and retaliation action against Guidehouse in the Superior Court of the District of Columbia ("D.C. Superior Court").

19.     Defendant's purported resignation for Good Reason—which is premised on Defendant's allegation that the move to a partially variable compensation model would cause a "material reduction of [his] total cash compensation opportunity"—ignores the fact that Defendant could earn *more* under the new model.

20.     Next, Defendant's threats to file an action in D.C. Superior Court ignore the Employment Agreement's New York choice of forum and choice of law provisions.

21.     Guidehouse brings this claim seeking a declaratory judgment that Defendant's employment was not terminated for Good Reason under the Employment Agreement.

### General Allegations

**A.   Defendant Shah's Employment at PwC Public Sector and Guidehouse**

22.     Upon information and belief, Defendant was employed by PricewaterhouseCoopers LLP ("PwC") in a consulting practice from September 1999 to February 2001.

6

23.     Upon information and belief, Defendant subsequently worked as a consultant at Deloitte Advisory LLP from February 2001 until he rejoined PwC as a principal (a non-CPA partner) in February 2016.

24.     During his second stint at PwC, Defendant initially worked in the commercial consulting practice.  Defendant later joined the US public sector consulting practice (PwC Public Sector) which was led by Scott McIntyre.  But for Defendant being picked up at that juncture, he would have been asked to depart PwC.  Defendant worked in the Capital Projects and Infrastructure practice at PwC Public Sector and conducted disaster work for state and local governments.

25.     On May 1, 2018, PwC Public Sector was acquired by Veritas Capital, at which point Defendant became an executive employee (partner) at Guidehouse.  Defendant entered into the Employment Agreement on February 13, 2018 in advance of the acquisition and was represented along with the other principals by an AmLaw 100 law firm throughout the arms-length transaction.  PwC Public Sector changed its name to Guidehouse on June 13, 2018.

26.     Throughout his employment at PwC Public Sector and Guidehouse, Defendant was a strong performer.  Defendant was also among Guidehouse's highest paid partners.

**B.  The Employment Agreement**

27.     The Employment Agreement, effective May 1, 2018, specifies the terms by which Defendant's employment may be terminated.

28.     Of relevance here, Section 3(e), entitled "Termination by Employee for Good Reason" states as follows:

> Employee may terminate the Period of Employment and Employee's employment with the Company for Good Reason. Upon such termination, Employee shall receive the payments and benefits set forth in Sections 3(c)(i) through (iv) above. The term "***Good Reason***" means the occurrence of any of the following events without Employee's consent, unless such events are fully corrected in all material respects by the Company within thirty (30) days following Employee's written

notice to the Company: (A) material diminution in Employee's title, powers, functions, duties, authorities or responsibilities; (B) material reduction of Employee's total cash compensation opportunity; or (C) any relocation of Employee's principal office, or principal place of employment, to a location that is more than fifty (50) miles from its location, as of the Effective Date; or (D) a material breach by the Company of this Agreement. Employee must provide the Company with a written notice detailing the specific circumstances alleged to constitute Good Reason within ninety (90) days after the first occurrence of such circumstances, and actually terminate employment within thirty (30) days following the expiration of the thirty (30)-day cure period described above. Otherwise, Employee will be deemed to have irrevocably waived any claim of such circumstances as "Good Reason."

29.     Sections 3(c)(i) through (iv) of the Employment Agreement detail certain types of payments to terminated employees, including Accrued Compensation, the Severance Payment, and bonus payments.

30.     Section 4 of the Employment Agreement provides that in order to receive the compensation described in Sections 3(c)(i) through (iv), Defendant must execute a General Release.  Section 4 states in relevant part:

> *As a condition to the Company's obligation to provide the payments and benefits* to Employee under Section 3(c) or 3(e) (other than the Accrued Compensation) in the event of Employee's separation from employment, Employee must first execute a General Release in the form attached hereto as Exhibit B and such General Release must become irrevocable (the date that the General Release becomes irrevocable, the "Release Effective Date") within sixty (60) days of termination of employment that releases and discharges all members of the Company Group, their officers, directors and employees, from *all claims of any type arising out of Employee's employment or termination of employment.*

(Emphasis added.)

### C. Defendant Seeks to Resign from Guidehouse but Nonetheless Obtain a Separation Payment

31.     Upon information and belief, Defendant—who initially had expressed reservations about joining Guidehouse—decided to leave Guidehouse to pursue other business interests.  To help fund his new venture, Defendant figured that he would seek a separation payment, as he heard that certain other partners were then being exited with separation payments.  With that in mind, on

8

the evening of Friday, June 21, 2019, Defendant reached out to Guidehouse CEO Scott McIntyre to express concerns as to a recently-announced change to the partner compensation structure.  In telephone conversations that night, Defendant expressed concern that the firm was moving to a compensation model with a variable component, and, repeatedly voiced his displeasure at being in an effectively high tax bracket.  Defendant inquired whether he could obtain an exit package.

32.     McIntyre reassured Defendant during these conversations that he was a highly valued employee, and that Guidehouse did not want Defendant to leave the firm (and of course, that the firm refused to incentivize Defendant's exit by offering him a separation package).  McIntyre further assured Defendant that although a portion of his, like others', compensation would be variable under the new model, it was likely that Defendant's total compensation would *increase* as a result of the changed model.[1]  McIntyre also noted that Defendant's practice would complement that of Navigant, a public company consulting firm, that Guidehouse was in the process of acquiring.[2]  Nonetheless, Defendant persisted in raising the possibility of separation payments and pointed to other partners who were receiving exit packages from the firm.

33.     McIntyre reinforced to Defendant the benefits that the new compensation model could have for a high-performing partner such as Defendant.  McIntyre also shared that any comparison of Defendant to the other partners he had identified was an apples-to-oranges comparison.  Whereas McIntyre viewed Defendant as a valuable partner in Guidehouse's future, the other partners were departing involuntarily—they had either underperformed individually or were employed in units that were being eliminated or restructured by the firm.  Those departing

---

[1] Defendant's draft complaint (to be filed in D.C. Superior Court) concedes that "the proposed change to variable compensation" was only "*likely* [to] negatively impact Shah's compensation[.]"

[2] Guidehouse completed its acquisition of Navigant on October 11, 2019.

partners would receive separation payments from the firm pursuant to the involuntary termination provisions of their employment agreements.

34.     In sum, McIntyre made clear to Defendant that he was a valued part of Guidehouse's future and would not offer him an exit package intended for those whose employment was being terminated involuntarily.

### D. Defendant Files an Internal Complaint, an EEOC Charge, and Threatens to File a Lawsuit

35.     On Monday, June 24, 2019, Defendant sent an email to Guidehouse's Chief Human Resources Officer raising "discrimination in favor of Partners who are white who have been offered certain benefits, options, opportunities and compensation packages while those like [him] (who are not white) are not."  Despite Defendant's conversations with McIntyre just three days before, this June 24 email was the first instance in which Defendant raised any allegations of discrimination during his employment with Guidehouse.  Defendant's allegations were found to be unsubstantiated, in view of the fact that the exiting partners were departing involuntarily, in contrast to the highly regarded and compensated Defendant whom the firm wanted to stay.

36.     Next, on July 8, 2019, Defendant filed a charge with the EEOC (the "Charge"), claiming discrimination on the basis of race, color, religion, national origin, family responsibility, and retaliation.  Defendant alleges in the Charge that former Guidehouse partners "who are white, not Muslim, not from India, and with longstanding relationships with Guidehouse's CEO, Scott McIntyre, were offered very lucrative compensation packages to separate from the firm," and that Defendant by contrast was not offered such a package.

37.     On August 15, 2019, after failing to extort an exit package, Defendant sent Guidehouse a letter, terminating his employment effective August 16.  Defendant purported to

resign from Guidehouse for Good Reason under the Employment Agreement on the ground that he had experienced a "material reduction of [his] total cash compensation opportunity."

38.     The next day, Guidehouse responded to Defendant's notice, advising that there had not been a triggering event under the Termination by Employee for Good Reason clause, and that Defendant would not receive a severance package in connection with his voluntary resignation. Additionally, Defendant had failed to execute a required general release referenced in the Employment Agreement (again, a prerequisite for receiving any payment for a resignation for Good Reason).

39.     On September 27, 2019, Defendant's counsel forwarded a draft complaint with the representation that Defendant "intends to file [a lawsuit against Guidehouse] in the Superior Court for the District of Columbia."  Defendant's draft complaint purports to bring discrimination claims all derived from Guidehouse's refusal to provide Defendant with a separation package.  Despite the fact that the Employment Agreement includes an express New York choice of law clause, the draft complaint is brought exclusively under D.C. law.

40.     Further, D.C. Superior Court is an improper venue for any legal action between Defendant and Guidehouse, as Defendant explicitly agreed in the Employment Agreement that any disputes arising out of the agreement be brought "exclusively in the United States District Court for the Southern District of New York."

## Case or Controversy

41.     As described above, Defendant asserts that he has experienced a "material reduction of [his] total cash compensation opportunity," and is entitled to payments for a Good Reason termination under the Employment Agreement, and that it is discriminatory for

Guidehouse not to accede to his demands.  To this end, he has threatened to file a lawsuit against Guidehouse in D.C. Superior Court.

42.     Accordingly, an actual case or controversy exists between Guidehouse and Defendant regarding the parties' rights and obligations in connection with Defendant's departure from the firm under the Employment Agreement.

<u>**Count I**</u>
<u>**Declaratory Judgment**</u>

43.     Guidehouse repeats and realleges each and every allegation contained in paragraphs 1 through 42 as if fully set forth herein.

44.     Throughout the course of the parties' relationship, Defendant was a high-performing employee who was valued by Guidehouse.  Guidehouse did not directly or indirectly request or take any action suggesting that Defendant's employment would be terminated involuntarily.

45.     Defendant had an opportunity to increase his compensation as a result of the proposed change to the variable compensation structure at Guidehouse and thus did not experience a "material reduction of [his] total cash compensation opportunity."

46.     Defendant has not satisfied the criteria of the Termination by Employee for Good Reason provision under the Employment Agreement and therefore is not entitled to any payment contemplated by that agreement.

47.     Guidehouse is entitled to a declaration that Defendant's employment was not terminated for Good Reason under the Employment Agreement, and therefore is not entitled to payment for a termination under that provision.

## PRAYER FOR RELIEF

WHEREFORE, Guidehouse prays for judgment against Defendant Rizwan Shah and requests that this Court grant the following relief:

1.      A declaration that Defendant has not effectively terminated his employment for Good Reason under the Employment Agreement, and is therefore not entitled to payment thereunder;

2.      Guidehouse be awarded its costs and fees; and

3.      Any other relief that the Court deems just and proper.

Dated: October 14, 2019                    WINSTON & STRAWN, LLP

                                           s/  Matthew A. Stark
                                           Stephen L. Sheinfeld
                                           ssheinfe@winston.com
                                           Matthew A. Stark
                                           mstark@winston.com
                                           Jeffrey I. Salomon
                                           jsalomon@winston.com
                                           200 Park Avenue
                                           New York, NY 10166-4193
                                           Telephone: (212) 294-6700
                                           Facsimile: (212) 294-4700

                                           Attorneys for Plaintiff, Guidehouse LLP